UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**DOUGLAS RANDOLPH GILBERT**,<br><br>Debtor. | Case No. **12-61446-7** |
| **KRISTINE WERNER**,<br><br>Plaintiff.<br><br>-vs-<br><br>**DOUGLAS RANDOLPH GILBERT**,<br><br>Defendant. | Adv No. **12-00060** |

## MEMORANDUM of DECISION

At Butte in said District this 30th day of April, 2013.

In this Adversary Proceeding, after due notice, trial was held April 9, 2013, in Butte. Plaintiff Kristine Werner ("Kristine") and Defendant Douglas Gilbert ("Douglas") appeared at the trial *pro se*. Kristine, Douglas, Patricia MacGraw and Tandy Gunderson testified. Kristine's Exhibits 1 through 6, and 8 through 22, along with Douglas's Exhibits A, C through E, and H were admitted into evidence. At the conclusion of the trial, the Court took the matter under advisement. This Memorandum of Decision includes the Court's findings of fact and conclusions of law.

1

FACTS

During the trial, Kristine and Douglas presented evidence, some of which was not necessarily germane to the issue of whether the money Douglas owes Kristine is dischargeable. However, because the parties deemed it important to present such facts, the Court includes them in this Memorandum of Decision.

On December 17, 2012, Kristine filed a two-page document, in the form of a letter, which the Court treated as a complaint to except the sum of $6,680.00 from Douglas's Chapter 7 discharge. The sum of $6,680.00 stems from an order entered on January 26, 2012, in the Justice Court of the State of Montana in and for the County of Gallatin County, Bozeman, wherein Justice of the Peace Rick West concluded that Douglas breached certain oral and written contracts he had entered into with Kristine, and that Kristine had suffered damages totaling $6,680.00. Based upon such conclusions, on January 26, 2012, judgment was entered in favor or Kristine and against Douglas in the amount of $6,680.00.

The sum of $6,680.00 relates to money Kristine loaned Douglas in 2008. Prior to that time, in late 2007, Douglas was living in Wisconsin and corresponding with Kristine. At that time, Douglas had three children from a marriage and a fourth child from a prior relationship. Douglas moved from Wisconsin to Montana in December of 2007. At the time he moved to Montana, Douglas thought he had a job working in the construction industry. The construction job did not materialize and Douglas instead accepted a position as Chief Engineer for Wingate Inn. Douglas's job at Wingate Inn did not pay what Douglas had anticipated receiving from the construction job.

During their correspondence and shortly after Douglas moved to Montana, Douglas

conveyed to Kristine that he was financially solvent and made over $100,000.00 per year. Kristine noted that Douglas's representations were corroborated by the fact that Douglas purchased a computer on October 6, 2007, *see* Exhibit E, and also paid well over $600.00 in December of 2007 for skies, boots and poles, *see* Exhibit 10. Kristine explained that Exhibits E and 10 were relevant and important because "a person who has outstanding debts doesn't go out and buy unnecessary objects." Douglas's purchase of the computer and other items lead Kristine to believe that Douglas "did not have any unnecessary debt" because "a responsible person would certainly not conduct themselves in that manner."

In April of 2008, Douglas told Kristine he needed money so he could contest his child support and visitation. At or about this same time, Douglas represented to Kristine that he had no debt, other than a couple thousand dollars in child support arrears, that he did not believe in credit cards, and that if Kristine loaned him money, Douglas would pay her back by selling some of his stuff. Douglas went so far as to show Kristine three fur coats that Douglas said were worth $10,000.00 and a metering instrument that Douglas told Kristine was worth $5,000.00, which Douglas said he could sell and use the proceeds to repay Kristine. Douglas also expressed a desire to take Kristine to Glacier, Alaska and New York.

Believing Douglas had no debt, other than his child support arrears, between April of 2008 and August of 2008, Kristine loaned Douglas $6,680.00. Douglas does not dispute that Kristine loaned him $6,680.00 and in fact, in an email addressed to Kristine dated September 1, 2008, Douglas acknowledged that Kristine had given him "2500.00 for the lawyer, 680.00 for the ladies bumper, 500.00 to cover my truck, 500.00 misc. cash along the way, [and] 2500.00 for hiring CMS to get rid of my debt or try to[.]"

3

Douglas moved into Kristine's home in May of 2008, and agreed to pay Kristine rent and help with expenses. Douglas testified that he lived with Kristine in 2008, 2009, and 2010. Kristine contends Douglas moved out of her house in April of 2010, taking everything, including the fur coats and the metering instrument that Kristine claims were security for her loan. The January 26, 2012, Justice Court order reflects that Douglas had performed labor for Kristine during the period of late 2008 through December 2010. While Kristine disputed that Douglas's labor was sufficient or provided in lieu of a monetary boarding payment, the Justice Court did not award Kristine any sum for rent or household expenses. The record also reflects that, with the help of Douglas, Kristine, doing business as Konkrete Blond, was able to secure at least $7,200.00 of business from Wingate Inn.

At some point, Kristine began asking Douglas for repayment of the $6,680.00. Kristine testified that Douglas kept changing the date of payoff all through 2008 and 2009, telling Kristine he would repay Kristine as soon as he paid the debt on his truck. Douglas did not start repaying Kristine after he paid the debt on his truck. Similarly, Kristine received no benefit from the fur coats or the metering instrument. Kristine testified that a friend offered to pay Douglas $1,000.00 for all three coats, but Douglas refused the offer. Douglas eventually gave or sold one of the fur coats to a mutual friend who lived in Florida. Kristine also testified that after borrowing money from her, Douglas purchased multiple items for personal use, including skis, a saddle, and a flat bed for his truck. Douglas also sold his horses and horse trailer, all without paying Kristine the amounts she was owed.

In an email sent to Kristine dated August 24, 2010, Douglas wrote: "I have a little over 1000.00 per month to pay for my medical bills, fuel, food, besides wanting to make you happy.

4

It doesn't go very far but it will have to do for the moment until I can either get a better paying job, work a second job or find a way to make extra money. You say that I will not pay you back everything I have been given over the past couple of years. That is not true, I do have your email with it all on there and have saved it so I can look back at it to see exactly what I owe you for your kindness in helping me when I needed it most." Sometime after the aforementioned email, Kristine filed her complaint against Douglas in Justice Court because, according to Kristine, Douglas had promised to repay her within six months and was "spending money on non-necessities instead of paying his obligatory loan."

After Kristine was unable to collect on her Justice Court judgment, the Justice Court entered a notice of hearing on August 21, 2012, directing Douglas to appear on September 20, 2012, and testify as to any interest he had in property which could be used to satisfy the judgment. Douglas filed his voluntary Chapter 7 bankruptcy petition on September 6, 2012.

Exhibit A is a copy of Douglas's pay stub for the period March 1, 2013, to March 15, 2013. Exhibit A shows Douglas earned gross wages of $1,655.33 and after deductions, including child support of $767.57, Douglas's net pay for the aforementioned period was $507.39.

Kristine seeks to except the sum of $6,680.00 from Douglas's discharge arguing Douglas committed fraud when he borrowed money from her in 2008. Kristine testified she believed at the time she loaned the money to Douglas that he had the means to repay her and that Douglas intended to repay Kristine. Kristine asserts the debt was valid and secured,[1] and that Douglas had no intention of repaying the money he borrowed, despite having the financial wherewithal to do

---

[1] Kristine testified that Douglas said the furs and metering instrument would secure her loan. Kristine also testified that the Justice Court order validates her secured debt. However, nothing in the record suggests Kristine perfected her alleged security interest.

so. Kristine also contends Douglas had delinquent credit card and child support debt in 2008, even though he said he had no debt and did not use credit cards. Kristine believes Douglas continued his fraud when he purchased items for his personal use instead of repaying Kristine. While Kristine did not present any evidence of the amount of Douglas's debt during the period of time between April 2008 and August 2008, the second page of Exhibit A shows that as of June 30, 2012, Douglas owed $65,649.80 in delinquent child and spousal support. Also, attached to Exhibit C is a Writ of Execution showing Centron Services, Inc. secured a judgment against Douglas on February 9, 2012, in the amount of $2,008.94.

## APPLICABLE LAW

In her complaint, Kristine fails to cite the particular Bankruptcy Code section under which she seeks to except the sum of $6,680.00 from Douglas's discharge. However, the Court surmises, based upon Kristine's use of the word "fraud," that she is seeking to except such debt from discharge under 11 U.S.C. § 523(a)(2)(A).

Section 523(a)(2)(A) provides that, "a discharge under . . . this title does not discharge an individual debtor from any debt – (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, . . . ." To prevail on a § 523(a)(2)(A) claim, a creditor must establish five elements: "'(1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.'" *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 35 (9th Cir. BAP 2009) (quoting *Turtle Rock Meadows Homeowners*

*Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000)). *See also Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1246 (9th Cir. 2001); *American Express Travel Related Services Co. Inc. v. Hashemi (In re Hashemi),* 104 F.3d 1122, 1125 (9th Cir.1996); *Apte v. Japra, M.D., F.A.C.C., Inc. (In re Apte)*, 96 F.3d 1319, 1322 (9th Cir. 1996). Consistent with effectuating the underlying purposes of the Bankruptcy Code, exceptions to discharge under §§ 523 are to be narrowly construed. *See Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992). "The creditor bears the burden of proof to establish all five of these elements by a preponderance of the evidence." *In re Weinberg*, 410 B.R. at 35 (citing *Slyman*, 234 F.3d at 1085).

The determination of nondischargeability under § 523(a)(2)(A) is a question of federal, not state law and since the elements of § 523(a)(2)(A) mirror the common law elements of fraud, courts must interpret these elements consistent with the common law definition of "actual fraud" as set forth in the RESTATEMENT (SECOND) OF TORTS (1976) §§ 525-557A. *Field v. Mans*, 516 U.S. 59, 69, 116 S.Ct. 437, 443-44, 133 L.Ed.2d 351 (1995) ("'false pretenses, a false representation, or actual fraud,'. . . are common-law terms, and...in the case of 'actual fraud,'...they imply elements that the common law has defined them to include.").

The first three elements of § 523(a)(2)(A), when taken together, establish the element of intent to deceive, which the creditor must establish by a preponderance of the evidence. In other words, a creditor must establish that a debtor knowingly made a false representation, either express or implied, with the intent of deceiving the creditor. In a two-party transaction, the alleging party must prove the elements of misrepresentation and reliance directly and by a preponderance of the evidence and not by reference to the totality of the circumstances.

*Compare In re Slyman*, 234 F.3d at 1086, *with Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1086 (9th Cir. 1996). As to the remaining elements, a creditor sustains its burden of proof under § 523(a)(2)(A), if a Court, after considering the facts and circumstances of a particular case, answers the following two inquiries in the affirmative: 1) did the creditor justifiably rely on the debtor's representation–reliance; and 2) was the debt sought to be discharged proximately caused by the first two elements–causation.

A creditor must establish that it relied on the false representations made by the debtor. *Field*, 116 S.Ct at 438 (1995). Such reliance need not be reasonable, but it must be justifiable. *Id*. As the Supreme Court held in *Field*, "a person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Id*. at 444 (quoting § 540 Restatement (Second) of Torts (1976)). This standard depends upon the knowledge and experience of the person to whom the representations were made. As the Supreme Court in *Field* further explained:

> [A] person is "required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect. On the other hand, the rule stated in this Section applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses. Thus, a defect that any experienced horseman would at once recognize at first glance may not be patent to a person who has had no experience with horses."

*Id*. (quoting § 541, Comment a., RESTATEMENT (SECOND) OF TORTS (1976)). Interpreting this standard, the Ninth Circuit Court of Appeals teaches: "Although one cannot close his eyes and blindly rely, mere negligence in failing to discover an intentional misrepresentation is no defense

8

for fraud." *Apte*, 96 F.3d at 1322.

Finally, to prevail under 11 U.S.C. § 523(a)(2)(A), a creditor must establish that a claim sought to be discharged arose from an injury proximately resulting from his or her reliance on a representation that was made with the intent to deceive. *Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991). "Proximate cause is sometimes said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible." *Id*. at 604. Moreover, as the United States Supreme Court explained in *Field*, a court may turn to the RESTATEMENT (SECOND) OF TORTS (1976), "the most widely accepted distillation of the common law of torts" for guidance on this issue. *Field*, 116 S.Ct. at 443.

The RESTATEMENT (SECOND) OF TORTS (1976) explains that proximate cause entails (1) causation in fact, which requires a defendant's misrepresentations to be a "substantial factor in determining the course of conduct that results in loss, § 546; and (2) legal causation, which requires a creditor's loss to "reasonably be expected to result from the reliance." § 548A. *See also In re Creta*, 271 B.R. 214, 220 (1st Cir. BAP 2002). In determining the presence of proximate cause, however, courts must refrain from relying on speculation to determine whether and to what extent a creditor would have suffered a loss absent fraud. *Siriani v. Northwestern Nat'l Ins. Co. of Milwaukee, Wisc. (In re Siriani)*, 967 F.2d 302, 306 (9th Cir. 1992).

DISCUSSION

The period of time relevant for purposes of the Court's decision is April of 2008 through August of 2008, because that is when Kristine loaned Douglas the $6,680.00. Based upon a careful review of all the evidence, the Court finds that Kristine has not satisfied her burden of proof to except the sum of $6,680.00 from Douglas's discharge.

Kristine contends she would not have loaned Douglas any money had she known he had delinquent debt during the period of time in question in 2008. However, by her own admission, Kristine knew that Douglas owed past due child support in early 2008. Kristine argues that page 2 of Exhibit A shows that Douglas was "grossly in arrears" on his child support in early 2008. However, page 2 of Exhibit A only shows that Douglas owed $65,649.80 for child and spousal support as of June 30, 2012. While Exhibit A tends to suggest Douglas was delinquent in his child and spousal support payments in early 2008, nothing in the record establishes the amount of such arrearage. Kristine testified that she knew Douglas owed some past due child support in early 2008. Kristine failed to show whether the difference between what Douglas actually owed for child and spousal support in 2008 and what she thought he owed would have impacted her decision to loan the money to Douglas.

Likewise, while it is not completely clear what Kristine thought Douglas's debts were in early 2008, Kristine's Exhibit 15, which is the email Douglas sent to Kristine on September 1, 2008, shows that Douglas used the money he received from Kristine to not only pay for an attorney to deal with his child and spousal support, but also to pay for damage to a lady's bumper, cover his truck, to try and get rid of his debt, and for cash along the way. Clearly, Douglas was not a financially flush individual. Furthermore, the Court is not persuaded that Douglas was attempting to persuade Kristine that he was debt free in April through August of 2008, when he purchased a computer in October of 2007 or purchased skis, boots and poles in December of 2007. Those purchases simply have no relevance to this case.

Finally, the fact that Centron Services, Inc. issued Writs of Execution for a judgment of $2,008.94 entered February 9, 2012, does not establish that Douglas had "grossly defaulted on

credit card debts" in 2008.  In sum, Kristine has failed to establish that Douglas's financial condition in 2008 was a factor in her decision to loan Douglas money, particularly when Kristine admitted that she knew Douglas owed some amount for past due child support at the time.

While Kristine spent time addressing Douglas's financial condition in 2008, she spent more time and was more frustrated by the fact that Douglas, after borrowing the money from Kristine, sold some of his belongings and purchased items that were not necessary for his survival, all while not repaying Kristine the monies she was owed.  The problem with the foregoing is that the sale of assets and the purchase of items such as the saddle and other items happened after Kristine had loaned Douglas the money.  The Court's focus for purposes of this decision is what happened at or near the time Kristine loaned Douglas the money and whether Douglas said or did something that was false or fraudulent.  Kristine has not shown, by a preponderance of the evidence, that Douglas never intended to repay Kristine in 2008.  Because Kristine has not proven the first element of her § 523(a)(2)(A) claim, the Court need not address the other elements.

The Court does not disagree with Kristine's assessment that she is "a kind, compassionate, giving, honest, and trusting person."  However, the evidence in this case does not support a ruling in her favor.  At most, the evidence shows, based upon the order and judgment that was entered by the Justice Court, that Douglas breached various oral and written contracts.  Unfortunately, as explained in *Leeb v. Guy (In re Guy)*, 101 B.R. 961, 978 (Bankr. N.D.Ind. 1988):

> [A] mere breach of contract by the debtor without more, does not imply existence of actual fraud for purposes of the exception to discharge under § 523(a)(2)(A).
> *In re Emery*, 52 B.R. 68, 70 (Bankr. E.D.Pa. 1985).

In accordance with this Memorandum of Decision,

IT IS ORDERED that a separate judgment shall be entered in favor of the Defendant, Douglas Gilbert; and Plaintiff Kristine Werner's complaint is dismissed, with prejudice.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana